**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

---

HILDA VIGIL,

Plaintiff,

v. Case No. 1:25-cv-01323-KWR-JFR

TAOS SKI VALLEY, INC.,

Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**THIS MATTER** comes before the Court on Defendant's Motion for Judgment on the Pleadings. Def.'s Mot. J. Pleadings, Doc. 19. Defendant argues that its motion should be granted because (1) Plaintiff seeks a remedy that is "explicitly barred by Tenth Circuit precedent," (2) "[Defendant] did not breach any duty owed Plaintiff," and (3) "[Defendant] did not cause Plaintiff's alleged injury." Def.'s Reply Supp. Mot. J. Pleadings at 2, Doc. 22. Plaintiff argues that (1) Defendant "owed a fiduciary duty to Vigil" and that (2) she "seeks appropriate equitable relief." *See generally* Pl.'s Resp. Opp. Mot. J. Pleadings, Doc. 20.

The Supreme Court recognized equitable surcharge for "make-whole relief" under ERISA § 502(a)(3) as a viable remedy and Plaintiff's Complaint plausibly pleaded a claim for such relief. Her claim can proceed only on one of her two grounds, however. Exhibit B to Defendant's Answer shows that Defendant responded to Plaintiff's March 2023 inquiry, so she may not proceed with her claim on the allegation that Defendant never responded. *See* Answer Ex. B, Doc. 6. But her single count for surcharge also rests on another ground: Defendant's alleged failure to disclose material information to Plaintiff in June 2024. That ground remains viable, and thus her claim survives.

Having reviewed both parties' briefing, the exhibits, and the applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is **DENIED**.

**BACKGROUND**

This dispute arises from Defendant's alleged violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). Pl.'s Compl. ¶¶ 30–41. Plaintiff filed her Complaint against Defendant on December 31, 2025. *See generally id.* Plaintiff's Complaint contains a single count against Defendant based on 29 U.S.C. § 1132(a)(3), otherwise known as ERISA § 502(a)(3). *See id.* ¶¶ 30–41.

Anthony Vigil, Plaintiff's now-deceased husband, whom the Complaint referred to as "the Insured," received group life insurance from his employment with Defendant. *Id.* ¶¶ 5, 7–11. The Insured began working for Defendant in 1982 and elected two types of group life insurance coverage: Personal Life Insurance ("PLI"), paid for by Defendant, and Voluntary Life Insurance ("VLI"), paid for by the Insured through withholdings from his pay remitted by Defendant to Lincoln. *Id.* ¶¶ 6, 10–12. Plaintiff alleges that Defendant served as the "Plan Administrator" of the Insured's life insurance provided by Lincoln National Life Insurance Company ("Lincoln"). *Id.* ¶¶ 8–11. Plaintiff was the intended beneficiary of the Insured's life insurance plan. *Id.* ¶ 13.

In October 2018, the Insured was diagnosed with cancer, but he continued to attend work until November 10, 2022. *Id.* ¶¶ 15–16. From then until his termination in February or March 2023, Defendant paid the Insured through his unused vacation and sick leave, continued paying his PLI premiums, and withheld his VLI premiums from his pay to remit to Lincoln. *Id.* ¶¶ 17–19. In March 2023, Defendant "initiated a Long Term Disability ("LTD") claim with Lincoln on the Insured's behalf, which Lincoln approved." *Id.* ¶ 20. Following the Insured's termination, the Vigils (Plaintiff and the Insured) emailed Defendant to "inquire about maintaining the Insured's

life insurance coverage." *Id.* ¶ 21; *see* Def.'s Answer Ex. B. Further, Plaintiff alleges "[Defendant] never responded, and effectively ceased all contact with the Insured." *Id.* Defendant disputes the allegation and attaches email communication dated March 10, 2023 to its Answer reflecting Defendant's response to the inquiry informing the Vigils that they must contact Lincoln to "set up payments to continue with [the Insured's] life insurance." Answer Ex. B.

On June 7, 2024, the Insured died. Compl. ¶ 22. Subsequently, on June 11, 2024, Plaintiff filed a claim for PLI and VLI benefits with Lincoln. *Id.* ¶ 23. Plaintiff alleges that, "upon receipt of [Plaintiff's] claim, Lincoln initiated a series of communications and attempted communications with [Defendant] concerning the status of the Insured's coverage." *Id.* ¶ 24. In one of these alleged communications, Lincoln stated that, "although the Insured's group life insurance coverage had not been ported or converted," it "would reinstate coverage and pay Vigil's claim if [Defendant] would pay back premiums from the date the last premium was paid in February or March 2023 through June 7, 2024." *Id.* ¶ 25. Plaintiff further alleges that, on June 28, 2024, Defendant told Lincoln that its "client consult" stated that the Insured was ineligible for his group coverage once he went on LTD and refused to pay the premiums. *Id.* ¶ 27. Plaintiff alleges that Defendant, again, "did not relay this information." *Id.* On July 2, 2024, Lincoln denied Plaintiff's claim. *Id.* ¶¶ 28. Plaintiff then appealed the adverse claim determination, which Lincoln denied on November 7, 2024. *Id.* ¶ 29.

Plaintiff alleges in her Complaint that Defendant was an ERISA fiduciary of the Insured's life insurance and it violated its duties under § 502(a)(3) by: (1) failing to disclose to the Insured that he was ineligible for his group life insurance policy and of his right to port or convert his coverage, (2) refusing to answer the Vigils' inquiries regarding the Insured's group life insurance, and (3) failing to disclose Lincoln's offer to reinstate coverage upon payment of back premiums,

in addition to Defendant's decision not to pay them. *Id.* ¶¶ 30–41. Plaintiff contends she is entitled to the "lost benefits and interest . . . in the form of an equitable surcharge or other similar relief" totaling "the value of the life insurance proceeds of at least $95,000, plus interest." *Id.* ¶ 40. Plaintiff also seeks attorneys' fees and costs under 29 U.S.C. § 1132(g)(1). *Id.* ¶ 41.

**LEGAL STANDARD**

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings "should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (quoting *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006), *abrogated on other grounds by*, *Magnus, Inc. v. Diamond State Ins. Co.*, 545 F. App'x 750, 753 (10th Cir. 2013)). Courts apply "the same standard that applies to a Rule 12(b)(6) motion" for judgment on the pleadings. *Park Univ.*, 442 F.3d at 1244.

Rule 12(b)(6) authorizes the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Thus, to survive a motion for judgment on the pleadings, a complaint must have sufficient factual matter that, if true, states a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of*

*Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).

In ruling on a motion to dismiss under Rule 12(b)(6), "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). When considering a motion for judgment on the pleadings, the Court should "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Id.* The Court accepts "all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Colony Ins.*, 698 F.3d at 1228 (quoting *Park Univ.*, 442 F.3d at 1244).

## DISCUSSION

In its Motion, Defendant argues that it is entitled to judgment on the pleadings because (1) Plaintiff seeks a remedy that is "explicitly barred by Tenth Circuit precedent," (2) "[Defendant] did not breach any duty owed Plaintiff," and (3) "[Defendant] did not cause Plaintiff's alleged injury." Reply at 2. Plaintiff argues that (1) Defendant "owed a fiduciary duty to [Plaintiff]" and that (2) she "seeks appropriate equitable relief." *See generally* Resp. (citation modified).

### I. **Equitable surcharge relief is not barred under § 502(a)(3).**

Defendant's first argument—Plaintiff cannot properly seek equitable surcharge in the amount of make-whole relief damages under § 502(a)(3)—is a gating issue that requires resolution in advance of Defendant's and Plaintiff's separate contentions. If Plaintiff cannot statutorily attain the relief she seeks in her Complaint, judgment on the pleadings is appropriate without a further factual inquiry. The Court finds that Plaintiff properly can seek equitable surcharge under § 502(a)(3).

Plaintiff brings this action under § 502(a)(3):

(a) A civil action may be brought ...

> (3) by a participant, beneficiary, or fiduciary
>
> (A) to enjoin any act or practice which violates any provision of [Title I of ERISA] or the terms of the plan, or
>
> (B) to obtain other appropriate *equitable relief* (i) to redress such violations or (ii) to enforce any provisions of [Title I of ERISA] or the terms of the plan[.]

29 U.S.C. § 1132(a)(3)(A) and (B) (emphasis added). Defendant argues this Circuit's holding in *Callery v. U.S. Life Insurance Co.*, 392 F.3d 401 (10th Cir. 2004) expressly precludes Plaintiff from receiving what is tantamount to compensatory damages under § 502(a)(3). *Callery* held that "in a suit by a beneficiary against a fiduciary, the beneficiary may not be awarded compensatory damages as 'appropriate equitable relief' under § 502(a)(3) of ERISA." *Id.* at 409. However, the reasoning that led to that holding rested on a premise the Supreme Court subsequently rejected. The *Callery* panel concluded that the defendant's fiduciary status was immaterial to the prospective relief under § 502(a)(3). *Id.* ("[T]he status of the defendant, whether fiduciary or nonfiduciary, does not affect the question of whether damages constitute 'appropriate equitable relief' under § 502(a)(3).") (quoting *McLeod v. Oregon Lithoprint Inc.*, 102 F.3d 376, 378 (9th Cir. 1996)). The Supreme Court in *CIGNA Corp. v. Amara*, 563 U.S. 421, 442 (2011) held to the contrary, declaring that the identity of the defendant is pivotal to the determination of the relief capable of being offered, and can allow for make-whole monetary relief. A prior panel decision does not bind where intervening Supreme Court authority runs contrary to it.

Additionally, the weight of the majority of other circuits persuades and unpublished 10th Circuit opinion marshal allowing make-whole monetary relief as an equitable remedy under § 502(a)(3).[1]

**A. *CIGNA* permitted equitable surcharge claims for "make-whole relief" under § 502(a)(3).**

The Supreme Court in *CIGNA*, resolving a longstanding controversy over the forms of acceptable relief under ERISA claims, expressly recognized that equitable surcharge is one type of remedy that properly "fall[s] within the scope of the term 'appropriate equitable relief' in § 502(a)(3)." *Id.* at 442. The Supreme Court held that equitable surcharge relief taking the form of monetary compensation does not demand removing it from the class of appropriate equitable relief under § 502(a)(3). *See id.* at 441–42 ("Equity courts possessed the power to provide relief in the form of monetary compensation for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. Indeed, prior to the merger of law and equity, this kind of monetary remedy against a trustee, sometimes called a surcharge, was exclusively equitable.") (internal citations and quotation marks omitted).

Specifically, the Supreme Court held that "a fiduciary can be surcharged under § 502(a)(3) only upon a showing of actual harm—proven (under the default rule for civil cases) by a preponderance of the evidence." *Id.* at 444. The "actual harm" anticipated by the Supreme Court is variable but often manifests in prototypical ERISA breaches of fiduciary duty. *See id.* ("The actual harm may sometimes consist of detrimental reliance, but it might also come from the loss of a right protected by ERISA or its trust-law antecedents."). In *CIGNA*, the harm arose from the

---

[1] *See Stark v. Reliance Standard Life Ins.*, 142 F.4th 1252, 1257, fn. 2 (10th Cir. 2025). The Court discusses *Stark*'s survey of the circuits that adopted *CIGNA*'s holding, below. *See also Watson v. EMC Corp.*, No. 1:19-CV-02667, 2024 WL 501610, at *3 (10th Cir. Feb. 9, 2024). The Court also discusses the Tenth Circuit's unpublished opinion in *Watson*, below.

employer-petitioner's failure to give proper notice of changes to employee-respondents' benefit program resulting in "less generous benefits." *Id.* at 424. The district court found that the disclosures were incomplete and misleading, thus the district court reformed the plan's terms and ordered the employer to pay benefits as reformed, relying on § 502(a)(1)(B). *See id.* at 428–34. The Supreme Court found that while § 502(a)(1)(B) was an improper vehicle for such relief, the flexibly designed § 502(a)(3) can confer this sort of equitable relief. *Id.* Ultimately, by tracing our modern courts' lineage to the merger of law and equity,[2] the Supreme Court recognized surcharge under § 502(a)(3) as a make-whole relief, monetary in form and compensatory in impact, measured by the loss the fiduciary's breach caused when that ERISA fiduciary violates its obligations. *Id.* at 442–445. Indeed, contrary to *Callery*, the availability of surcharge as a remedy hinges on the identity of the defendant—if the defendant is a fiduciary, surcharge is permitted. *See id.* at 439–44. By tracing a thread from trustee to fiduciary, the Supreme Court explained that just as surcharge is appropriate against a trustee, it is appropriate against a fiduciary. *Id.* at 442 ("[I]nsofar as an award of make-whole relief is concerned, the fact that the defendant in this case . . . is analogous to a trustee makes a critical difference.").

Defendant misconstrues *CIGNA* insofar as it argues that the decision had no effect on the type of monetary award capable of serving as relief under § 502(a)(3). *See* Reply at 5, fn. 2. True, a monetary award of restitution was already an appropriate relief under § 502(a)(3) predating *CIGNA*. *Id.*; *Callery*, 392 F.3d at 406. However, *CIGNA* fundamentally modified the nature of

[2] The Supreme Court delineated the historical dichotomy between courts of law and courts of equity and the respective powers each were afforded. *See CIGNA*, 563 U.S. at 439–442. "[P]rior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a 'surcharge,' was 'exclusively equitable.'" (internal citations omitted). *Id.* at 442. "The surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." *Id.*

the monetary award a plaintiff can request as relief; *CIGNA* describes the monetary relief in the case of a fiduciary who causes an actual harm as "make-whole."[3] *Id.* Thus, that the relief Plaintiff seeks is compensatory, make-whole relief in effect does not remove it from § 502(a)(3) where the defendant is a fiduciary, which Plaintiff here alleges.[4] *See* Compl. ¶¶ 9, 31; Resp. at 5–6.

**B. *CIGNA* is the prevailing precedent.**

Defendant views *CIGNA* as not having altered the effect of *Callery*. In its reply, Defendant contends that "*Callery* remains good law, and binding precedent in the Tenth Circuit" despite the Supreme Court's decision in *CIGNA*. Reply at 3. While the Tenth Circuit has yet to issue a decision articulating the rule from *CIGNA*, the Supreme Court's precedent is binding on all circuits. The Tenth Circuit has not yet addressed whether § 502(a)(3) offers surcharge relief in a published opinion but directed a district court to determine whether to provide § 502(a)(3) surcharge relief in an unpublished opinion. Further, most circuits have expressly adopted *CIGNA*'s holding.[5]

*CIGNA* is binding precedent. First, Defendant advances two cases to corroborate its position that *Callery* still governs: *Martinez v. Plumbers & Pipefitters Nat'l Pension Plan*, 795 F.3d 1211, 1223 (10th Cir. 2015) and *Denney v. Humana Ins. Co.*, 704 F. Supp. 3d 1262, n.2 (W.D. Okla. 2023). In both cases, citations to *Callery* are collateral to the holdings in the respective cases and neither contradicts *CIGNA*'s holding. *Martinez* cites *Callery* once—solely for the proposition

---

[3] In detailing equity courts' historical powers and surcharge's lineage from trustee/beneficiary law, the Supreme Court elaborated that the equity courts "simply ordered a trust or beneficiary made whole following a trustee's breach of trust." *Id.* at 444. The remedy was flexible—the equity courts would "mold the relief to protect the rights of the beneficiary according to the situation involved." *Id.* (quoting *G. Bogert & G. Bogert, Trusts and Trustees*, § 862 (rev. 2d ed. 1995)).

[4] The Court discusses Defendant's contentions about its fiduciary status at greater depth below.

[5] *See Stark v. Reliance Standard Life Ins.*, 142 F.4th 1252, 1257, fn. 2 (10th Cir. 2025). The Court discusses *Stark*'s survey of the circuits that adopted *CIGNA*'s holding, below.

that "ERISA preempts state law claims, including equitable estoppel claims." 795 F.3d at 1223. *Denney* also exclusively references *Callery* a single time and in a footnote, only to establish that § 502(a)(3) cannot be used to "impose liability for a contractual obligation to pay money." 704 F. Supp. 3d at n.2. *CIGNA* does not discuss imposing liability for a contractual obligation to pay money—rather, it establishes that a plaintiff can sue for equitable surcharge to recover a make-whole, monetary remedy from a fiduciary.

Second, Defendant asserts that *CIGNA* did not overrule *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993) or *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)), and that *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136 (2016) "confirmed that [the Supreme Court's] interpretation of 'equitable relief' in those cases 'remains unchanged.'" Reply at 3 (quoting *Montanile*, 577 U.S. at 148, fn. 3) (citation modified). However, neither argument advances Defendant's position because they do not reach the remedy at issue here. In *Montanile*, the respondent argued that *CIGNA* had "all but overrul[ed]" *Mertens* and *Great-West*. *See Montanile*, 577 U.S. at 148, fn. 3. Footnote three rejected that argument, but its answer reached only the remedy brought in *Montanile*. *CIGNA*, the Supreme Court explained, had reaffirmed that relief seeking a lien or constructive trust is legal, not equitable, unless it targets particular funds or property in the defendant's possession. *Id.* (quoting *CIGNA*, 563 U.S. at 439). *Montanile*'s ruling concerned an equitable lien by agreement, and its holding is stated throughout in those terms. *See generally id.* Additionally, the holdings in the other cases Defendant references are inapposite to the remedy at hand here: *Mertens* concerned a damages claim against a nonfiduciary actuarial firm and *Great-West* addressed equitable restitution. *See Mertens*, 508 U.S. at 251; *see also Great-West*, 534 U.S. at 213–16. Surcharge—make-whole relief against a party who stands as a fiduciary—was not an issue in any of them. Reading the footnote, as Defendant

asks this Court to do, would have this Court conclude that the Supreme Court disapproved of a remedy it had recognized a few years earlier. *Montanile* footnote three did state that *CIGNA*'s § 502(a)(3) analysis was not "essential to resolving that case." Characterizing an analysis as inessential is not analogous to repudiating it. The Supreme Court has not since held that surcharge is an unavailable remedy under § 502(a)(3). Additionally, the Tenth Circuit has stated that Supreme Court dicta is "almost as firmly" binding as "the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996). Thus, even if the *CIGNA*'s § 502(a)(3) analysis was dicta, it was announced recently and "not enfeebled by later statements." *Id.*

Furthermore, in a published opinion, the Tenth Circuit specifically declined to reach the question of surcharge and resolve the circuit split. *Stark v. Reliance Standard Life Ins.*, 142 F.4th 1252, 1257, fn. 2 (10th Cir. 2025) ("But, because we ultimately affirm the district court's ruling that pre-litigation attorney awards are unavailable under ERISA, we need not resolve [the surcharge circuit split] issue."). Nonetheless, the Tenth Circuit—albeit not in published opinion—has proceeded on the understanding that *CIGNA* distinguished *Callery*. In *Watson v. EMC Corp.*, No. 1:19-CV-02667, 2024 WL 501610, at *1–2 (10th Cir. Feb. 9, 2024), a beneficiary widow sued her former husband's employer under § 502(a)(3), seeking surcharge in the amount of a group life insurance policy lost after the employer's communications led the insured to believe his coverage remained in force. The facts of *Watson*, thus, resemble Plaintiff's allegations in her Complaint. The Tenth Circuit held that the district court "legally erred in treating her § [502(a)(3)(B)] claim for fiduciary breach as a § [502(a)(1)(B)] claim to recover under the plan." *Id.* at *3. The panel described surcharge, without qualification, as "a form of monetary compensation" that "courts of equity could award . . . 'for a loss resulting from a trustee's breach of a duty, or to prevent the

trustee's unjust enrichment.'" *Id.* at fn. 3 (quoting *CIGNA*, 563 U.S. at 441). The panel noted that the employer "ha[d] not adequately developed an argument in its response brief that a surcharge is never appropriate under § [502(a)(3)(B)]," so it did not consider it. *Id.* at fn. 5.

This Court is careful not to overread *Watson*. *Watson* did not decide whether and what type of surcharge is available under § 502(a)(3). What *Watson* did, however, was reverse the denial of a surcharge claim seeking the value of a lost life insurance policy benefit against an employer-fiduciary and remand for further proceedings on that claim—critically, without suggesting that *Callery* stood in the way. 2024 WL 501610, at *3. Indeed, *Callery* is not cited anywhere in the panel's opinion. *See generally id.*

Finally, as the Tenth Circuit recently noted, "[a]ll but one circuit court consider the issue concluded that the Supreme Court's [*CIGNA*] decision authorizes 'monetary remedy against a trustee, sometimes called a 'surcharge,'' as an 'exclusively equitable remedy' available under § [502(a)(3)]." *Stark*, 142 F.4th at 1257, fn. 2;[6] *See Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d 91, 102 (2d Cir. 2020)*; Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013)*; Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 891–92 (7th Cir. 2013)*; Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 725 (8th Cir. 2014)*; Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 962–63 (9th Cir. 2014)*; Gimeno v. NCHMD, Inc.*, 38 F.4th 910, 914–15 (11th Cir. 2022); *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 296 n.11 (3d Cir. 2014).

The Tenth Circuit has not squarely decided whether surcharge is available relief under § 502(a)(3). It left the question open in *Stark*, and in *Watson* it directed the district court to decide the issue under § 502(a)(3). *See Stark*, 142 F.4th at 1257, fn. 2; *see also Watson*, 2024 WL 501610,

---

[6] *Stark* included the Sixth Circuit among the circuits following *CIGNA*'s holding. However, the Sixth Circuit has since disregarded the Supreme Court's holding as dicta. *See Aldridge v. Regions Bank*, 144 F.4th 828 (6th Cir. 2025).

at *3. In resolving the question here, the Court is guided by the Supreme Court's decision in *CIGNA*. *See In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (holding that superseding Supreme Court precedent binds over a former panel's decision). The Court concludes that surcharge is an available remedy under § 502(a)(3).

**C. Equitable surcharge does not require an identifiable res.**

Defendant argues in the alternative that even if equitable surcharge is available, "there is no res to which monetary equitable relief can attach." Reply at 6. Relying on *Teets v. Great-West Life & Annuity Insurance Co.*, 921 F.3d 1200, 1224 (10th Cir. 2019), Defendant asserts equitable remedies are "directed against some specific thing" rather than "a right to recover a sum of money generally out of the defendant's assets." Reply at 6 (quoting *Montanile*, 577 U.S. at 145). The Court disagrees. If the remedy is an equitable lien or restitution, *Montanile* requires an identifiable fund or traceable property; but surcharge is conceptually and legally different because it is a remedy for a fiduciary's breach that requires no identifiable fund or traceable property.

*Montanile* pronounced its rule for only equitable liens. Its holding and each of its load-bearing statements are limited to the purview of equitable liens: a plaintiff "could ordinarily enforce an equitable lien only against specifically identified funds"; "[e]quitable liens thus are ordinarily enforceable only against a specifically identified fund"; "[t]his rule applied to equitable liens by agreement as well as other types of equitable liens." *Id.* at 144–46. *Montanile*'s rule is limited to equitable liens and the decision makes no mention of the word "surcharge." *See generally id.* Furthermore, *CIGNA*, which expressly implicates equitable surcharge, makes no

mention of a "res" or "identified fund" required for surcharge.[7] *See generally CIGNA*, 563 U.S. 421.

## II. **Plaintiff may not proceed on the allegation that Defendant failed to respond to the March 2023 inquiry.**

Defendant argues that Plaintiff failed to respond to Defendant's argument as to the March 2023 grounds in her Response such that she abandoned the grounds. Defendant further argues that its March 2023 communication to Plaintiff was timely and adequate. Mot. at 8–10. The Court finds that Exhibit B of Defendant's Answer prevents Plaintiff from proceeding on the theory that Defendant failed to respond to her March 2023 email inquiry. However, the Court declines to decide whether the content of Defendant's March 2023 response satisfied its fiduciary obligations.

Plaintiff's Complaint sets forth a single count for breach of fiduciary duty under § 502(a)(3). *See* Compl. ¶¶ 30–41. Plaintiff advances two primary grounds, both arising from failures of communication and disclosure, to support her claim under this single count: Defendant (1) failed to respond to Plaintiff's March 2023 inquiry about the Insured's continued eligibility for his group life insurance coverage and inform Plaintiff of the need to port or convert his group policy to an individual policy and (2) failed to disclose to Plaintiff Lincoln's June 2024 offer to reinstate the Insured's coverage upon remittance of back premiums, which Plaintiff alleges she would have paid. *Id.* ¶¶ 21, 24–27, 38–39. Defendant contends that Exhibit B in its Answer contradicts Plaintiff's first ground and that because of Plaintiff's failure to address Defendant's argument that it provided adequate notice in March 2023, she abandoned the claim. *See* Resp. at

[7] *CIGNA* only discusses "particular funds" to the extent it notes "relief that sought a lien or a constructive trust was legal relief, not equitable relief, unless the funds in question were 'particular funds or property in the defendant's possession.'" 563 U.S. at 439 (quoting *Great-West*, 534 U.S. at 213).

8–10; *see also* Reply at 7–8. The Court agrees in part. Because Plaintiff's single count proceeds on two independent grounds, the abandonment of only one ground does not entitle Defendant to judgment on the pleadings. However, the Court finds Defendant's argument as to the March 2023 ground well-taken.

Plaintiff does not object to the consideration of Exhibit B to Defendant's Answer. She does not dispute its authenticity and does not contend that its consideration would require converting the motion under Rule 12(d). Importantly, Plaintiff does not argue that she failed to receive Exhibit B. *See generally* Resp. On the contrary, Plaintiff describes the March 2023 response in the factual background section of her own Response to Defendant's Motion. *Id.* at 2. Arguments of this kind are ordinarily waived if not raised. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court therefore considers Exhibit B.

Consideration is proper in any event. Where a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss. *Id.* The Tenth Circuit applied this standard to documents submitted by a defendant in connection with a Rule 12(c) motion, and its analysis turned on the role the document played in the plaintiff's claim rather than on the way it reached the court. In *Zevallos v. Allstate Prop. & Cas. Co.*, 776 F. App'x 559, 561, fn.1 (10th Cir. 2019) (unpublished), the defendant attached its insurance policy, a settlement-offer letter, and a settlement and release to its answer, then moved for judgment on the pleadings. The Tenth Circuit explained that reliance on the settlement-offer letter was proper because the letter was referenced and relied on in the plaintiff's complaint. *Id.* Reliance on the settlement agreement, however, was not proper because the complaint made no mention of it, and the agreement was not central to the plaintiff's claim but

instead established release and waiver, which are affirmative defenses rather than part of the claim. *Id.*

Exhibit B of Defendant's Answer meets that standard. First, the Complaint refers to Plaintiff's March 2023 inquiry to Defendant. Compl. ¶¶ 21, 38. Exhibit B contains Plaintiff's March 2023 email inquiry, along with Defendant's reply. *See* Answer Ex. B. Second, the exchange is central to Plaintiff's claim because Defendant's alleged failure to respond to that inquiry is one of the two grounds on which her single § 502(a)(3) count rests. *See* Compl. ¶¶ 21, 24–27, 38–39. Third, as noted above, Plaintiff does not dispute the authenticity of Exhibit B. *See generally* Resp. This case, therefore, differs from *Zevallos*. In *Zevallos*, the settlement agreement was never mentioned in the complaint and was offered only to establish affirmative defenses. 776 F. App'x at 561, fn.1. Here, on the other hand, Exhibit B depicts the very email exchange that Plaintiff relies on in her Complaint for one of the grounds of her one count for equitable surcharge under § 502(a)(3).

A document properly before the Court controls over contrary allegations: "[m]ere legal conclusions and factual allegations that contradict such a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp.*, 130 F.3d at 1385 (citing *Jackson v. Alexander*, 465 F.2d 1389, 1390 (10th Cir. 1972)). Exhibit B of Defendant's Answer reflects that Defendant responded to Plaintiff's March 2023 inquiry two days after she sent it. Answer Ex. B. Plaintiff's allegation that Defendant never responded is at variance with that document and is not a well-pleaded fact the Court must accept as true. Plaintiff therefore may not proceed on the theory that Defendant failed to respond to her March 2023 email inquiry. The Court declines to decide whether the content of that response satisfied Defendant's fiduciary obligations.

**III. Plaintiff, nevertheless, properly pleads a claim for equitable surcharge under § 502(a)(3) in her complaint.**

Defendant argues that Plaintiff fails to show that what she seeks qualifies as equitable surcharge, and that her failure to develop the claim necessarily forfeits it. Reply at 4–6. This argument is not persuasive. According to the Federal Rules of Civil Procedure, a complaint must state a "short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2)–(3). A plaintiff need not name or defend her specific remedial theory. As the Supreme Court declared, the federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). Moreover, Plaintiff explicitly requests "equitable surcharge" in her Complaint. Compl. ¶ 40 ("[Plaintiff] is entitled to have such lost benefits and interest assessed against Taos in the form of an equitable surcharge or other similar relief.").

A plaintiff must only state a claim for relief that is plausible and alleges specific enough facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 677–78. *CIGNA* promulgates the governing standard to be liable for surcharge:

> [A] fiduciary can be surcharged under § 502(a)(3) only upon a showing of actual harm . . . . [A] plan participant or beneficiary must show that the violation injured him or her. But to do so, he or she need only show harm and causation. Although it is not always necessary to meet the more rigorous standard implicit in the words 'detrimental reliance,' actual harm must be shown.

*CIGNA*, 563 U.S. at 444. And, as stated, "[t]hat actual harm may sometimes consist of detrimental reliance, but it might also come from the loss of a right protected by ERISA or its trust-law antecedents." *Id.* Accordingly, to state a claim for equitable surcharge, a plaintiff must allege that

(1) the defendant acted as a fiduciary, (2) the defendant breached a duty owed in that capacity, (3) the plaintiff suffered actual harm, and (4) the breach caused that harm. Plaintiff's remaining allegations plausibly satisfy each element. The harm that *CIGNA* identified as sufficient to support a claim for make-whole surcharge relief resembles the claim Plaintiff alleges: the loss of a right protected by ERISA, occasioned by an employer-fiduciary's failure to disclose material information. *Id.* at 444. Nothing more is required at this stage.

**A. Plaintiff sufficiently pleads that Defendant was acting as a fiduciary.**

First, Plaintiff sufficiently alleges that Defendant was acting as a fiduciary.

> A [party] is a fiduciary with respect to a plan to the extent (i) [it] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) [it] renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) [it] has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (also known as ERISA § 3(21)(A)); *see also Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996). There are two types of fiduciaries: (1) named fiduciaries and (2) functional fiduciaries. *See Teets*, 921 F.3d at 1206–07. Named fiduciaries, expectedly, are named in the instrument creating the plan for which they act as a fiduciary. *Id.* at 1206. Functional fiduciaries take on fiduciary status by manner of the authority or control they exert over the plan. *Id.* at 1207. Thus, the determination of whether Defendant was acting in a fiduciary function is a fact bound inquiry. Plaintiff's bare assertion that "[Defendant] is a plan fiduciary" is a legal conclusion that the Court does not countenance. *See Iqbal*, 556 U.S. at 678. But the Complaint does not rest with this bare legal conclusion. Plaintiff also alleges that Defendant was the Plan Administrator. Compl. ¶ 9. Although Defendant denies this allegation in its Answer, at this stage of the proceedings the Court takes Plaintiff's well-pleaded factual allegations as true. Answer ¶ 9; *see*

*Collins*, 656 F.3d at 1214. More importantly, Plaintiff alleges that Defendant paid premiums for the Insured's life-insurance coverage by withholding and remitting premiums for his coverage. Compl. ¶¶ 14, 18. Further, Plaintiff alleges that, after the Insured ceased actively working for Defendant, it continued making premium payments, assisted with the Insured's LTD benefits claim, communicated with Lincoln concerning the Insured's coverage, and ultimately declined to pay premiums to reinstate coverage without informing Plaintiff. *Id.* ¶¶ 17–20, 24–28. These allegations are sufficient to plausibly allege that Taos exercised authority and responsibility regarding the administration of the Insured's Plan. *See Teets*, 921 F.3d at 1206–07.

Further, Defendant argues that it cannot have owed a fiduciary duty to Plaintiff in June 2024 after it terminated the Insured's insurance coverage. Reply at 9–10. This argument misapprehends how fiduciary duties function—they are not temporal but functional. While fiduciary duties are not interminable, termination of employment or benefits does not, alone, similarly terminate fiduciary duties regarding conduct that is otherwise fiduciary in nature. A fiduciary forfeits that role only when it ceases exercising discretionary authority or control over plan management or assets. The Tenth Circuit tacitly affirmed this proposition in the factually similar case, *Watson*. In *Watson,* a former employee emailed his former employer and asked how he can pay for his benefits. 2024 WL 501610, at *1. The former employer gave him the option to convert his life insurance from a group to an individual policy. *Id.* The former employee never converted his policy, and the insurer denied his widow's claim. *Id.* The widow sued the employer on a breach of fiduciary theory arising from the email exchange, which postdated her husband's separation from the employer. *Id.* Although the question was not raised, the Tenth Circuit remanded the widow's claim for the district court to decide without holding that because her husband was not employed by the defendant-employer at the time of the alleged misconduct, her

claim was barred. *See id.* at *3. Moreover, here, Plaintiff pleads, and Defendant admits, that Defendant communicated with Lincoln regarding the status of the Insured's coverage and Defendant's involvement, reflecting that Defendant may have been exercising discretionary control over the Insured's policy. Compl. ¶¶ 24–27; Answer ¶¶ 24–25.

Nevertheless, the Court does not conclude at this stage that every action Defendant took related to the Insured's coverage was fiduciary in nature. At the pleading stage, however, Plaintiff has asserted sufficient facts to plausibly allege that Defendant acted as a fiduciary during the time of the alleged misconduct.

**B. Plaintiff sufficiently pleads that Defendant breached a fiduciary duty.**

Plaintiff alleges that Defendant breached its fiduciary duty by refusing to pay Lincoln's offer to reinstate coverage upon remittance of back premiums and failing to disclose this offer. Compl. ¶¶ 24–27, 39. A fiduciary is required to "discharge [its] duties with respect to [the Plan] solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries[.]" 29 U.S.C. § 1104(a)(1). Additionally, a fiduciary must discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." § 1104(a)(1)(B).

The Tenth Circuit has not directly addressed the issue of whether failing to produce material information regarding a beneficiary's plan is required absent a request for the information. However, other circuits have answered this issue, and a peer district court in this circuit has recently found these holdings to be adequately persuasive authority and comport with the generally heightened obligations of fiduciaries. *See Watson v. EMC Corp.*, 1:19-CV-02667, 2025 WL

1333806, at *3–4 (D. Colo. May 7, 2025) ("Although the Tenth Circuit has not directly addressed this issue, the Court finds the guidance from other circuits persuasive."). The Ninth Circuit has long recognized that a fiduciary must actively disclose material information. *See e.g.*, *Farr v. U.S. W. Commc'ns, Inc.*, 151 F.3d 908, 914 (9th Cir. 1998) ("[A] 'fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information.'") (quoting *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995)). The Third Circuit issued a similar pronouncement regarding the trustee-beneficiary relationship: the "duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993). The D.C. Circuit similarly held that "[a]t the request of a beneficiary (and in some circumstances upon his own initiative), a fiduciary must convey complete and correct material information to a beneficiary." *Eddy v. Colonia Life Ins. Co.*, 919 F.2d 747, 750 (D.C. Cir. 1990). Plaintiff alleges that in June 2024, Defendant had a series of communications with Lincoln regarding the possibility of reinstating the Insured's coverage and Defendant failed to "relay" the information. Compl. ¶¶ 24–27. The information transmitted to Defendant regarding the ability to reinstate the Insured's coverage rises to the level of material information to disclose to Plaintiff. Therefore, the Court finds that the Plaintiff, at least at this stage of the proceedings, sufficiently pleads that the Defendant breached a fiduciary duty by not disclosing Lincoln's June 2024 communications.

**C. Plaintiff sufficiently pleads that she suffered the alleged actual harm.**

In *CIGNA*, the Supreme Court declared that a plaintiff must demonstrate "actual harm" to recover under § 502(a)(3). 563 U.S. at 444. The Supreme Court is careful not to enumerate any

stringent range of actual harms: "[i]nformation-related circumstances, violations, and injuries are potentially too various in nature to insist that harm must always meet that more vigorous 'detrimental harm' standard when equity imposed no such strict requirement." *Id.* at 445. Plaintiff alleges that Defendant's breach caused her to be "denied the value of the life insurance proceeds." Compl. ¶ 40. In the absence of any comprehensive test for "actual harm" from the Tenth Circuit, the Court finds Plaintiff's pleadings sufficient.

**D. Plaintiff sufficiently pleads that Defendant caused the alleged harm.**

Finally, Defendant argues that Plaintiff conceded the argument that Defendant caused the alleged harm and, even if Plaintiff had not conceded causality, the alleged harm was caused only by Plaintiff's "failure to take over premium payments." Mot. at 8–11; Reply at 8–11. However, in making this argument, Defendant conflates the alleged incidents in Plaintiff's Complaint. The March 2023 and June 2024 incidents are separate causal incidents, not to be confused. As previously stated, the alleged March 2023 nondisclosure theory is barred, but the alleged June 2024 incident independently supports a causal relationship with Plaintiff's alleged harm.

First, Plaintiff did not abandon the causation element. Defendant relies on an unpublished case from this Court, *Bock v. Salt Creek Midstream LLC*, No. 19-1163 WJ/GJF, 2020 WL 3989646, at *15 (D.N.M. July 15, 2020). Reply at 8–10; *see also* 2020 WL 3989646, at *15. However, Plaintiff does address causation, if not under that precise language. In her Response, Plaintiff states that Defendant declined Lincoln's offer for reinstatement of the Insured's plan "without even consulting [Plaintiff], who would have happily stepped in and paid the back premiums or reimbursed [Defendant] the less than $1,300 that would have resulted in her receiving $95,000." Resp. at 5. Implicit in this argument is that Defendant's breach by nondisclosure

resulted in the alleged loss of the $95,000 policy. The Court declines to treat an element of the Complaint as abandoned through imprecise briefing.

Second, the alleged June 2024 incident independently can form the cause of breach of fiduciary duty. Defendant is correct that a plaintiff alleging a breach of fiduciary duty under ERISA must establish a causal link between the breach and the harm, even though Defendant's cited authority is not directly on point in supplying this standard for § 502(a)(3).[8] *CIGNA* supplies the standard for a § 502(a)(3) equitable surcharge claim: "a plan participant or beneficiary must show that the violation injured him or her. But to do so, he or she need only show harm and causation." 563 U.S. at 444.

Defendant's causation argument is that the Plaintiff's failure to arrange premium payments in March 2023 caused the life insurance coverage to lapse, and that Defendant's later refusal to remit back premiums to Lincoln "did not reverberate backward through time to cause the claims to be denied in the first place." Reply at 11. The premise of this argument is that Plaintiff's injury was final—and Plaintiff caused it—when Defendant informed Plaintiff in March 2023 that the Insured's group coverage ended and Plaintiff allegedly failed to set up individual payments. This assumption, however, ignores that Plaintiff's Complaint alleges a distinct breach in June 2024. Despite what occurred in 2023, the lapse was curable as of June 2024, and Lincoln had offered the cure to Defendant. The distinct injury that Plaintiff alleges, and Defendant elides, is the lost opportunity. Indeed, Plaintiff alleges that Defendant declined Lincoln's offer, told Lincoln its "client consult" had concluded the Insured was ineligible once he went on LTD, and never disclosed any of this information to her. Compl. ¶¶ 24–27. Plaintiff paints the causal chain: "as a

---

[8] Defendant cites *Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Tr. V. Alerus Fin., N.A.*, 858 F.3d 1324, 1334–37 (10th Cir. 2017) (holding the burden of causation remains on the plaintiff in proving breach of fiduciary under 29 U.S.C. § 1109).

result of [Defendant's] refusal to pay the requested premiums and/or failure to notify [Plaintiff] so that she could pay them, Lincoln denied [Plaintiff's] claim." *Id.* ¶ 28. Again, under *CIGNA*, Plaintiff need only show "harm and causation." The Court finds that the lost opportunity to reinstate the Insured's policy is such a harm that the *CIGNA* Court contemplated, and Plaintiff has sufficiently alleged its cause.

**CONCLUSION**

Plaintiff's requested relief is not foreclosed: the Supreme Court in *CIGNA* authorized equitable surcharge for make-whole relief under § 502(a)(3). And although Defendant's Exhibit B refutes Plaintiff's allegation that it failed to respond in March 2023, Plaintiff nonetheless pleaded each element of a surcharge claim—Defendant's fiduciary status, Defendant's breach of a fiduciary duty, Plaintiff's actual harm, and Defendant's causation.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 19) is hereby **DENIED** for the reasons described in this Memorandum Opinion and Order.

/S/
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE